UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH WHITE,

        Plaintiff,

v.                                      Case No: 2:10-cv-565-Ftm-38UAM

MARTIRN DENMAN, FNU MCGENITY,
MARGARET FERRELL, TIMOTHY
BUDZ and GEORGE GINTOLI,

        Defendants.
_____/

## **OPINION AND ORDER**[1]

This matter comes before the Court upon review of the file. Plaintiff Joseph White ("Plaintiff") is civilly detained at the Florida Civil Commitment Center ("FCCC") pursuant to Florida's Involuntary Civil Commitment of Sexually Violent Predator's Act and is proceeding *pro se*.[2] Plaintiff initiated this action by filing a civil rights complaint

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] The Florida legislature enacted the Sexually Violent Predators Act, Fla. Stat. §§ 394.910-.913, by which a person determined to be a sexually violent predator is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2). The Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." *Westerheide v. State*, 831 So. 2d 93, 112 (Fla. 2002); *Kansas v. Hendricks*, 521 U.S. 346 (1997) (holding that the Kansas

pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff is proceeding on an amended complaint ("Amended Complaint") (Doc. 13). In his Amended Complaint, Plaintiff sues Defendants FCCC Director Timothy Budz, GEO Vice-President George Gintoli, Nurse Martirn Denman, Nurse Margaret Ferrell, and Nurse McGenity (collectively, "Defendants") in each defendant's individual capacity (Doc. 13 at 1-3).

Because Plaintiff is proceeding *in forma pauperis*, the Court is required to review Plaintiff's Amended Complaint to determine whether it is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). In essence, § 1915(e)(2) is a screening process to be applied *sua sponte* and at any time during the proceedings. Despite Plaintiff's non-prisoner status, his Amended Complaint is subject to initial review under 28 U.S.C. § 1915(e)(2)(B). *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (recognizing that the district court did not err when it dismissed a complaint filed by a civil detainee for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir.

---

Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive). Civil commitment under the Act involves several steps. First, the Act requires a mental evaluation of any person who has committed a sexually violent offense and is scheduled for release from prison or involuntary confinement. *See generally* Fla. Stat. § 394.913. The evaluation is conducted by a multi-disciplinary team of mental health professionals who must determine whether the individual meets the definition of a "sexually violent predator." After the evaluation, the state attorney may file a petition with the circuit court alleging that the individual is a sexually violent predator subject to civil commitment under the Act. *Id.* If the judge determines the existence of probable cause that the individual is a sexually violent predator, then he or she will order the individual to remain in custody. *Id.* at § 394.915. Thereafter, a jury trial, or a bench trial if neither party requests a jury trial, will commence. *Id.* If the jury finds the individual to be a sexually violent predator by clear and convincing evidence, then the individual will be committed to the custody of the Department of Children and Family Services for "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." *Id.* at § 394.917.

2001) (determining that § 1915(e)(2)(B) is not limited to prisoners, but applies to all persons proceeding *in forma pauperis*).

## I.     Complaint[3]

The facts, as alleged by Plaintiff, are as follows:

On May 5, 2009, Plaintiff was prescribed antibiotics for a sore on his "testicle sac" (scrotum) by FCCC physician Dr. Lamour, who is not a named defendant in this action (Doc. 13 at ¶ 16). Plaintiff was told to report to the medical department twice a day for treatment and dressing of the lesion. *Id.*

### a.     *Allegations regarding the refusal of female nurses at the FCCC to treat Plaintiff's scrotum*

On June 1, 2009, when Plaintiff sought treatment and dressing for his scrotum, Defendant McGenity told Plaintiff not to come to the medical department again unless he was "dying" (Doc. 13 at ¶ 8).[4] Defendant McGenity, in the presence of Defendants Denman and Ferrell, refused to treat Plaintiff's scrotum and threatened to write an incident report if Plaintiff returned to the medical department. *Id.* Although largely illegible, Plaintiff wrote a grievance on Nurse Robinson for similar behavior on October 17, 2009, noting that she told Plaintiff that a male nurse should always treat Plaintiff's scrotum (Doc. 38-1 at 18). Plaintiff filed a grievance on November 6, 2009, alleging that

---

[3] All facts are taken from Plaintiff's Amended Complaint and the attachments to the Amended Complaint (Docs. 13, 38). *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Plaintiff repeatedly directs the Court's attention to his exhibits (Doc. 13 at ¶¶ 4-19). However, although Plaintiff re-filed the exhibits at the Court's direction (Doc. 31), portions are still illegible. The illegible portions will not be considered or addressed by the Court.

[4] Plaintiff repeats his identical allegation against Defendant McGenity with a date of June 1, 2010 (Doc. 13 at ¶ 6) and in a grievance filed on March 9, 2010 (Doc. 38-1 at 46).

when he sought treatment from Nurse Brewer, she told him to come back later because she was busy (Doc. 38-1 at 23). In a grievance filed on November 23, 2009, Plaintiff alleged that he went to the nursing station to receive treatment to his scrotum, he was told by Nurse Van that the female nurses at the FCCC would no longer treat his wound, but that she would give him the dressing to apply himself (Doc. 38-1 at 25). On December 18, 2009, Plaintiff filed a grievance stating that he was receiving inadequate medical care because the female nurses at the FCCC refused to provide "proper and adequate" medical health care due to the location of his wound (Doc. 38-1 at 34). On February 3, 2010, Plaintiff filed grievances accusing Nurse Denny of refusing to treat him because he was a "stupid ass" male and she did not like males (Doc. 38-1 at 39, 40, 42). On February 3, 2010, Plaintiff filed a grievance alleging that Nurse Latour refused to treat Plaintiff's scrotum, but told him that he could do it himself in the emergency room with a male staff member present (Doc. 38-1 at 43).

In response to his October 17, 2009 grievance against Nurse Robinson, Plaintiff was told that he was only allowed to come to the medical unit when a male nurse was available to provide treatment because Plaintiff had been inappropriate with female nurses during treatment (Doc. 38-1 at 18). He was also instructed to seek treatment earlier in the day (Doc. 38-1 at 1). In response to his March 9, 2010 grievance against Defendant McGenity, Plaintiff was instructed that he was allowed to come to the medical department, but only when a male staff member was present. Plaintiff was advised to call the medical department prior to visiting to ensure the presence of a male staff member (Doc. 38-1 at 46). On May 25, 2010, Plaintiff was advised that, because

of his past behavior, there were "specific requirements" in place for Plaintiff to visit the medical department (Doc. 38-1 at 50).

In response to his November 6, 2009 and November 8, 2009 grievances against Nurse Brewer and Nurse Van, Plaintiff was told that he had been instructed to care for his wound himself and that "there [was] no reason why medical staff needs to assist." (Doc. 38-1 at 25). In response to his December 18, 2009 grievance, Plaintiff was told that he had received all medically necessary treatment ordered by Dr. Lamour for his condition (Doc. 38-1 at 37). In response to his February 3, 2010 complaint against Nurse Latour, Plaintiff was told that "[t]he decision has been made by Dr. Lamour that you can perform your own dressing changes or come to medical when a male staff member is present." (Doc. 38-1 at 43).

Plaintiff asserts that as a result of Defendants McGenity's, Ferrell's, and Denman's "interference" with his prescribed medical treatments, his scrotum wound became infected which ultimately affected his ability to walk, sit, stand, and sleep. Therefore, Plaintiff alleges that he has suffered unnecessary physical, mental, and emotional pain (Doc. 13 at 10-11).

### b.  *Retaliatory actions taken by female nurses at the FCCC*

Plaintiff alleges that on November 15, 2009 Defendants Denman, Ferrell and McGenity had Plaintiff confined to an unsanitary portion of the medical department's infirmary area for five days in retaliation for Plaintiff's expressed intent to file grievances against the nurses for the denial of care for his scrotum (Doc. 13 at ¶ 15). Plaintiff alleges that this portion of the infirmary did not have a working toilet, water, shower, or cleaning supplies and that his sheets were not changed the entire time he was confined,

and he was not provided personal toiletries or a change of clothing (Doc. 13 at ¶ 15; Doc. 38-1 at 8).

Plaintiff alleges that, on June 28, 2010, Defendant Ferrell told Plaintiff that she would not provide medical treatment to Plaintiff because of his history of filing grievances against her (Doc. 13 at ¶ 12). Although Plaintiff directs the Court's attention to the grievances filed regarding this allegation, the only grievance submitted concerning actions occurring on June 28, 2010 is largely illegible (Doc. 38-1 at 54). However, Plaintiff elaborated in the grievance that he was told by the nurses that he could not see the doctor because there was "nothing wrong" with him. *Id.* In response, Plaintiff was told that he was asked to leave the medical department because Plaintiff had "stormed into the room." *Id.*

### c.   *Allegations against Defendants Timothy Budz and George Gintoli*

Plaintiff asserts that Defendant Budz created a "de facto custom, policy or practice in which unconstitutional violations [have] occurred by either negligently training, supervising, directing, approving or acquiescing in subordinates['] unlawful acts of depriving residents at the facility of necessary, inexpensive and readily available medical care and treatment for their serious medical conditions and need for treatments." (Doc. 13 at 5). Plaintiff asserts that due to Defendant Budz' failure to intervene and take reasonable actions to deter the unlawful customs and practices, Plaintiff has been injured and caused to suffer unnecessary physical, mental, and emotional pain (Doc. 13 at 10). In regards to his allegations against Defendant Budz, Plaintiff directs the Court's attention to a document entitled "Facility Administrator Resolution" (Doc. 13 at ¶¶ 5, 9). No document with this title is attached to Plaintiff's

Amended Complaint. However, in Plaintiff's original complaint, he attached copies of letters written by Suzonne M. Kline and Katharine v. Lyon of Florida's Department of Children and Families, in which Timothy Budz was copied as the FCCC "Facility Administrator." (Doc. 1-2 at 27-31). Presumably, Plaintiff attached the documents as evidence that Defendant Budz was aware of the alleged constitutional violations that were occurring at the FCCC.[5]

Plaintiff asserts that as a result of Defendant Gintoli's failure to intervene, investigate, and take reasonable actions to deter Defendant Budz' unconstitutional and unlawful customs and practices at the FCCC, Plaintiff has been injured and caused to suffer unnecessary physical, mental, and emotional pain (Doc. 13 at ¶¶ 6, 10, 13).

### d. Request for damages

As relief, Plaintiff seeks monetary damages against each Defendant in the form of compensatory damages, punitive damages, emotional and mental damages, attorney fees and costs, and any further relief to which he may be entitled (Doc. 13 at 13-14).

---

[5] These letters, dated December 21, 2009, January 25, 2010, and March 5, 2010 informed Plaintiff that he had been ordered to do his own wound care "as the condition does not require the aid or assistance of others"; noted that Plaintiff had been "properly instructed on how to hygienically apply [his] prescribed medication"; advised Plaintiff that his "medical condition has improved in that there are no open sores"; noted that Plaintiff could either have a male nurse assist in dressing changes or perform his own dressing changes in his dormitory; and explained that Plaintiff had been admitted to the infirmary due to a diagnosis of contagious shingles, which required strict isolation to protect inmates with compromised medical functioning (Doc. 1-2 at 27, 28, 30).
   Even if these letters are the "Facility Administrator Resolution" documents referenced in Plaintiff's Amended Complaint, the Court declines to consider their substance because they were not attached to Plaintiff's operative complaint. However, Plaintiff is not prejudiced by the absence of the letters from his exhibit because the content is largely redundant to that contained elsewhere in his exhibit and, as discussed *infra* Part III(c), Defendant Budz is dismissed from this action (Doc. 38-1).

## II.     Standard of Review

A federal district court is required to review a civil complaint filed *in forma pauperis* and to dismiss any such complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915. The mandatory language of 28 U.S.C. § 1915 applies to all proceedings *in forma pauperis*. Specifically, the section provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> (A)   the allegation of poverty is untrue; or
>
> (B)   the action or appeal-
>
> > (i)   is frivolous or malicious;
> >
> > (ii)  fails to state a claim on which relief may be granted; or
> >
> > (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

A complaint may be dismissed as frivolous under § 1915(e)(2)(B)(i) where it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a right that clearly does not exist. *Id.* at 327. In addition, where an affirmative defense would defeat a claim, it may be dismissed as frivolous. *Clark v. Georgia Pardons & Paroles Bd.*, 915 F.2d 636, 640 n.2 (11th Cir. 1990).

The phrase "fails to state a claim upon which relief may be granted" has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6), and we will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii)."). That is, although a complaint need not provide detailed factual allegations, there "must be enough to raise a right to relief above the speculative level", and the complaint must contain enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In making the above determinations, all factual allegations in the complaint must be viewed as true. *Brown v. Johnson*, 387 F.3d 1344, 47 (11th Cir. 2004). Moreover, the Court must read the plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519 (1972).

### III. Analysis

To state a claim under § 1983, a plaintiff must allege that: (1) a violation of a specific constitutional right or federal statutory provision; (2) was committed by a person acting under color of state law. *Doe v. Sch. Bd. of Broward County, Fla.*, 604 F.3d 1248, 1265 (11th Cir. 2010). Construing Plaintiff's claims in a liberal fashion, the Court determines that he seeks damages from: (1) Defendants Denman, Ferrell, and McGenity because his Eighth Amendment rights were violated by the defendants' deliberate indifference to his serious medical needs when they refused to treat his scrotum; (2) Defendants Denman, Ferrell, and McGenity because his First Amendment rights were violated when he was threatened with retaliation if he continued to file

grievances against the female nursing staff at the FCCC; and (3) Defendants McGinity and Budz because they refused to intervene to discipline the FCCC nurses despite being informed of the nurses' allegedly unconstitutional conduct.[6]

### a. Plaintiff has not stated an Eighth Amendment claim against Defendants Denman, Ferrell, or McGenity

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, (1976)).[7] In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit recognized that an Eighth Amendment medical claim contains both an objective and a subjective component:

---

[6] The facts, as alleged in the Amended Complaint are accepted as true. However, the complaint is disjointed and non-sequential, and many paragraphs merely repeat allegations, almost verbatim, with different dates. Moreover, while portions of the complaint recite Plaintiff's legal conclusions, they do not articulate specific acts by the defendants that rise to constitutional violations. In addition, Plaintiff repeatedly references attached exhibits, but has failed to provide a complete legible set of the exhibits. The Court will not speculate as to the constitutional violations Plaintiff intended to allege in the incoherent or illegible parts of his Amended Complaint. Accordingly, any claim predicated upon such a portion of the Amended Complaint is dismissed pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1915(e)(B)(2)(ii).

[7] Under *Youngberg v. Romeo*, the Due Process Clause of the Fourteenth Amendment ensures the involuntarily civilly committed a liberty interest in reasonably safe conditions of confinement, freedom from unreasonably bodily restrains, and such minimally adequate training as might be required to ensure safety and freedom from restraint. 457 U.S. 307, 322 (1982). The rights of the involuntarily civilly committed are "at least as extensive" as the Eighth Amendment rights of the criminally institutionalized. *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996). Therefore, the case law that has developed under the Eighth Amendment for prisoners sets forth the contours of the due process rights of the civilly committed. *Id.*

10

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). To meet the objective element required to demonstrate an unconstitutional denial of medical care, a plaintiff must demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). In order to satisfy the subjective component, a plaintiff must demonstrate the defendants' "deliberate indifference" to the serious medical need. *Id.* at 1243.

1. *Plaintiff has stated an objectively serious medical need*

A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by *Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002)). "In either of these situations, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (internal quotation marks omitted). Plaintiff's Eighth Amendment claim against Defendants Denman, Ferrell, and McGenity is based upon their refusal to treat the lesion on Plaintiff's scrotum.

Plaintiff alleges that the "large open wound" on his scrotum was an objectively serious medical need (Doc. 13 at ¶ 8). The Court does not recognize a genital lesion as a *per se* objectively serious medical need. However, Plaintiff asserts that he sought medical treatment and was prescribed antibiotics to treat the sore (Doc. 13 at ¶ 8).

11

Accordingly, reading the allegations of the Amended Complaint in the light most favorable to Plaintiff, the Court assumes, *arguendo*, that Plaintiff has alleged a sufficiently serious medical need regarding the lesion on his scrotum.

>   2.   *Plaintiff has not alleged facts showing that the defendants were deliberately indifferent to Plaintiff's health or safety*

"Deliberate indifference" entails more than mere negligence. *Estelle*, 429 U.S. at 106; *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The Supreme Court clarified the "deliberate indifference" standard in *Farmer* by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. In interpreting *Farmer* and *Estelle*, the Eleventh Circuit has explained that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Plaintiff alleges that, despite Dr. Lamour's order that Plaintiff have the dressing on his scrotum changed twice daily, Defendants Denman, Ferrell, and McGenity refused to treat his scrotum and told him that he must either seek treatment when a male nurse was available or treat the lesion himself. Thus, the facts as set forth in the Amended Complaint and legible exhibits show that Plaintiff did not object to the "treatment" prescribed by Dr. Lamour. Rather, Plaintiff takes issue with the female nurses' refusal to change the dressing on, or otherwise treat, his scrotum. However, the refusal of the female nurses to treat Plaintiff's scrotum was not deliberate indifference.

Even assuming, without deciding, that the defendant nurses had subjective knowledge of a risk of serious harm if the lesion was left untreated, Plaintiff has not stated facts showing that the defendants disregarded that risk. The exhibits attached to Plaintiff's Amended Complaint demonstrate that Plaintiff was not denied medical care for his scrotum. Rather, Plaintiff was denied the medical care he desired-- the treatment of his lesion by the female nurses at the FCCC. Plaintiff was advised on several occasions that Dr. Lamour had determined that Plaintiff could either come to the medical department when a male nurse was on duty, or he could be provided materials to treat his scrotum himself (Doc. [38-1](#) at 18, 25, 37, 43, 46). Plaintiff does not allege that he was denied, or was unable to obtain, treatment from the male medical staff at the FCCC or that he could not treat himself. Generally, where, as here, a § 1983 plaintiff receives medical treatment and care but alleges that he should have received different treatment or care, the conduct does not constitute deliberate indifference. *See Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ( "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

Accordingly, even if Plaintiff's allegations, liberally construed, establish that his scrotum lesion was an objectively serious medical need, and even if the female nurses at the FCCC had a subjective knowledge of the seriousness of Plaintiff's lesion, he has not alleged a deprivation of care that is cognizable under the Eighth Amendment because he does not allege that he was denied treatment by the FCCC. The decision

as to the type of treatment provided is a "classic example of a matter for medical judgment" that does not provide a basis for Eighth Amendment liability. *Estelle,* 429 U.S. at 107 ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment."). Therefore, all Eighth Amendment claims against Defendants Denman, Ferrell, and McGenity which are predicated upon their refusal to change the dressing on, or apply medicine to, Plaintiff's scrotum are dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### b. *Plaintiff has not stated a First Amendment retaliation claim against Defendants Denman, Ferrell, or McGenity*

In order to state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech was constitutionally protected; (2) he suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotations omitted); *Moton v. Cowart*, 631 F.3d 1337, 1341-42 (11th Cir. 2011). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton,* 631 F.3d at 1341 (quoting *Smith v. Mosley,* 532 F.3d 1270, 1278 (11th Cir. 2008)).

Plaintiff alleges that, as a result of filing grievances against the nursing staff, he was threatened, on June 1, 2009, with disciplinary confinement if he continued to visit the medical unit unless he was "dying" (Doc. 13 at ¶ 11). The Court recognizes that the filing of a grievance is a protected activity under the First Amendment. *Wright v.*

14

*Newsome*, 795 F.2d 964, 968 (11th Cir. 1986)  However, Plaintiff does not allege that he actually stopped visiting the medical unit or stopped filing grievances as a result of Defendant McGenity's threat.  To the contrary, Plaintiff attaches numerous grievances regarding the nurses' actions at the medical unit filed *after* Defendant McGenity made her allegedly retaliatory statement (Doc. 38-1 at 3, 18, 23, 25, 34, 39, 40, 42, and 43). Plaintiff also attaches a sick call request dated November 28, 2009 in which he was told that "an appointment in medical is being arranged." (Doc. 38-1 at 30).  Plaintiff does not allege in his Amended Complaint that he was placed in disciplinary confinement as retaliation for any of his subsequent visits to the medical department or for his sick call request.

Plaintiff also alleges that Defendants Denman, Ferrell and McGenity had Plaintiff placed in an unsanitary medical isolation ward for five days in retaliation for his expressed intent of filing an administrative grievance concerning the female nurses' refusal to treat his scrotum.  However, in Plaintiff's grievances regarding the confinement, he admits that he "understands why he was placed [in the medical ward isolation unit] medically," and questioned only the *conditions* in the unit.[8]  Due to the conflict between the Amended Complaint and the supporting documents, the Court relies on the information in the supporting documents. *Friedman v. Market Street Mortg. Corp.*, 520 F.3d 1289 (11th Cir. 2008) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.") (citing *Tucker v. Nat'l Linen Service Corp.*, 200 F.2d 858, 864 (5th Cir. 1953)); *Thompson v. Illinois*

---

[8] In the responses to his grievances, Plaintiff was told that he was placed in the medical isolation because of his shingles diagnosis, his failure to comply with Dr. Lamour's orders, and because his "behavior was not appropriate and [he was] yelling obscenities at staff." (Doc. 38-1 at 8, 28).

*Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."). Therefore, Plaintiff's single allegation that he was confined to the medical isolation ward in retaliation for filing grievances is insufficient to show a causal connection between his grievances and his tenure in the medical unit. Likewise, the Amended Complaint fails to allege any facts showing a causal connection between the conditions in the medical unit and the filing of Plaintiff's grievances.

Because there is no allegation in Plaintiff's Amended Complaint that he suffered disciplinary confinement or was deterred from seeking medical attention or from filing grievances as a result of Defendant McGenity's statement, Plaintiff has not alleged that he "suffered adverse action such that [the nurse's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech." *Mosely*, 532 F.3d at 1276. Likewise, because Plaintiff admits that he was confined in the medical isolation unit for medical reasons, his Amended Complaint does not allege a causal relationship between any alleged retaliatory action and Plaintiff's grievances against the female nurses at the FCCC. *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) Plaintiff's Amended Complaint fails to state a First Amendment claim for retaliation, and his First Amendment claims against Defendants Denman, Ferrell, and McGenity are dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### c. Plaintiff has not stated a claim against Defendants Timothy Budz or George Gintoli

The allegations of the Amended Complaint are insufficient to establish a plausibile "entitlement to relief" against Defendants Budz or Gintol. *Twombly*, 550 U.S. at 555-56. Plaintiff has not alleged that either of these defendants was personally or directly responsible for any constitutional violation. To the extent that Plaintiff now asserts that the defendants are vicariously liable for the actions of the FCCC's female nurses because his grievances against the nurses were denied, such a claim fails as a matter of law. Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based upon *respondeat superior* liability. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295 (11th Cir. 2006); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–95 (1978) (doctrine of *respondeat superior* is inapplicable to § 1983 actions). Instead, supervisors can be held personally liable only when: (1) the supervisor personally participates in the alleged constitutional violation; or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. *Id.*

Plaintiff does not assert that Defendants Budz or Gintoli personally engaged in any unconstitutional conduct. Plaintiff does, however, argue that Defendant Budz approved of his "subordinates['] unlawful acts of depriving residents at the facility of necessary, inexpensive and readily available medical care and treatment for their serious medical conditions and need for treatments." (Doc. 13 at ¶ 9). Plaintiff further argues that Defendant Gintoli "failed to intervene, or take necessary actions to enforce a lawful policy or practices [or] to deter . . . [unlawful] customs or practices of Defendant Budz at FCCC." (Doc. 13 at ¶ 10). A "causal connection" may be established by

showing that a supervisory official implemented, or allowed to continue, an official policy or unofficial policy or custom under which the violation occurred. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). However, the plaintiff must show that the supervisor's knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541–42 (11th Cir. 1994).

Plaintiff's allegation that Budz and Gintoli failed to intervene to stop the nurses' unlawful "policy or custom" of depriving him of medical care does not state a claim against either defendant because, as discussed, Plaintiff's Amended Complaint does not allege that he was denied treatment for his condition; rather, the Amended Complaint alleges only that Plaintiff was denied treatment by the female nurses at the FCCC. Because a confined Plaintiff is not entitled to the treatment of his choice, there was no "unlawful custom or policy" obligating intervention by either defendant. Likewise, Plaintiff has not alleged facts demonstrating that he was deterred from exercising his First Amendment right to file grievances, or that he suffered adverse consequences for doing so. Accordingly, Plaintiff has not stated a cognizable § 1983 claim against Defendants Budz or Gentoli, and the claims against these defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. CONCLUSION

**ACCORDINGLY**, it is hereby **ORDERED:**

1. All claims against Defendants GEO Director Timothy Budz, GEO Vice President George Gintoli, Nurse Martirn Denman, Nurse Margaret Ferrell, and Nurse

FNU McGenity are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted;

    2.    With no remaining claims or defendants, this case is **DISMISSED**.

    3.    The **Clerk of the Court** is directed to terminate all pending motions, to close this case, and to enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida on September 25, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA:    Orlp-4 Sep-13
Copies to:  All parties of record